RECEIVED
2025 APR -4 PM 4: 03
CLERK U.S. DIST. COURT
WEST DIST. OF MO
KANSAS CITY, MO

UNITED STATES DISTRICT COURT

**WESTERN DISTRICT OF MISSOURI**

**DARRELL LEON MCCLANAHAN III,**
Plaintiff,

v.

**DONALD J. TRUMP, in his official capacity as President of the United States;
UNITED STATES DEPARTMENT OF EDUCATION;
UNITED STATES DEPARTMENT OF JUSTICE,**
Defendants.

Case No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1. The Founding Fathers explicitly warned against the dangers of unchecked government power and tyranny. James Madison, in Federalist No. 47, stated that "the accumulation of all powers, legislative, executive, and judiciary, in the same hands... may justly be pronounced the very definition of tyranny." Likewise, Thomas Jefferson cautioned that "the natural progress of things is for liberty to yield and government to gain ground."

2. These principles remain as relevant today as they were at the nation's founding. Executive Order 13899 exemplifies the type of overreach our Constitution was designed to prevent—an overreach that consolidates power and infringes upon the fundamental rights of American citizens.

3. Plaintiff Darrell Leon McClanahan III brings this action challenging Executive Order 13899 (2019) and its expanded application in 2025, issued by Donald J. Trump in his official capacity as President of the United States.

4. These orders, to be enforced by the U.S. Department of Education and U.S. Department of Justice, constitute an unconstitutional suppression of protected political speech and an establishment of religion.

5. This case centers around government overreach and the suppression of free expression, particularly through the abuse of federal power to stifle criticism of U.S. foreign policy and the government of Israel.

6. The executive orders and legal frameworks in question prioritize the protection of Jewish individuals and organizations, effectively creating a chilling effect on the right to dissent.

7. The expansion of such measures threatens to further curtail free speech by targeting those who criticize U.S. support for Israel or engage in political discourse surrounding Zionism, labeling such expressions as hate speech.

8. This not only silences criticism of a foreign government but also stifles fundamental First Amendment rights. Furthermore, the orders unconstitutionally establish Judaism as a state-favored religion.

9. Plaintiff seeks:
A. A declaratory judgment that Executive Order 13899, as expanded, is unconstitutional.
B. A preliminary injunction and temporary restraining order (TRO) barring enforcement of the order.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this case arises under the First and Fifth Amendments to the U.S. Constitution and the Establishment Clause.

11. Venue is proper in this District under 28 U.S.C. § 1391(b), as Plaintiff resides in Missouri and suffers harm within this jurisdiction.

## III. STANDING

12. Plaintiff Darrell Leon McClanahan III, a United States citizen, political advocate, and Christian proponent of the Two-Seedline doctrine within Christian Identity teachings." residing in the Western District of Missouri, possesses standing to challenge Executive Order 13899 and its 2025 expansion. As a former candidate for Governor of Missouri, I actively engage in political discourse in public spaces and online, voicing criticisms of U.S. foreign policy, advocating for government accountability, and expressing my religious beliefs.

13. As a public advocate who routinely engages in public discourse regarding government actions, I have a duty to challenge government policies that infringe upon constitutional rights. The First Amendment's guarantees of freedom of

2

speech, the right to petition, and religious liberty, affirmed by consistent judicial precedent, empower citizens to contest government policies that directly or indirectly chill protected expression.

14. The White House Fact Sheet of January 30, 2025 (Exhibit A), titled "President Donald J. Trump Takes Forceful and Unprecedented Steps to Combat Anti-Semitism," states that the administration will "aggressively prosecute anti-Semitic crimes" and, critically, (a key expansion of the order's scope beyond college campuses) focus enforcement efforts directly on American streets. These statements present a credible threat to my First and Fifth Amendment rights, given the lack of clear definitions and the broad scope of enforcement.

### IV. Claims to Standing (Injury-in-Fact)

15. Chilling Effect on Free Speech: The Fact Sheet's language, particularly the stated focus on enforcement on American streets, creates uncertainty about what speech might be deemed unlawful, compelling me to self-censor my political and religious viewpoints to avoid potential prosecution. Courts have recognized that government policies creating ambiguity and fear of punishment violate the First Amendment. Grayned v. City of Rockford, 408 U.S. 104 (1972).

16. Economic and Administrative Harm: My four children rely on Medicaid, a government benefit, for essential healthcare. The potential loss of this benefit, due to the administration's policy of withholding federal funding based on certain speech, directly threatens their access to necessary medical care. Additionally, I am a recipient of a Rural Development government home loan, crucial for my family's financial stability. The administration's policy of withholding federal funding based on certain speech demonstrates a willingness to use economic leverage to regulate expression. These concerns are not speculative, but grounded in established legal precedent, where selective enforcement and indirect coercion were deemed unconstitutional. Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013).

17. Due Process Violations: The Order's vague definition of "anti-Semitic crimes" lacks clear statutory guidance, raising serious Fifth Amendment concerns regarding fair notice and potential arbitrary enforcement. FCC v. Fox Television Stations, Inc., 567 U.S. 239 (2012).

18. Pattern of Government Involvement in Speech Regulation: The federal government has previously exerted pressure on social media platforms and institutions to suppress speech (as evidenced in Missouri v. Biden). I have

3

personally experienced online content restrictions when discussing political issues related to Israel, further reinforcing the likelihood that government influence extends beyond direct legal actions. Norwood v. Harrison, 413 U.S. 455 (1973).

**V. Redressability**

19. A favorable ruling would provide immediate relief by:

- Preventing unconstitutional prosecution under an overly broad policy, thereby protecting my ability to engage in free speech in public spaces and on American streets.
- Ensuring my ability to engage in free speech without fear of government retaliation, safeguarding my right to express political and religious views in all forums.
- Safeguarding my family's Medicaid benefits and Rural Development loan from politically motivated scrutiny.

20. Under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), my standing is clear: the government's policy directly affects my ability to speak, worship, and advocate, especially in the public square on American streets, making judicial intervention necessary to prevent irreparable harm.

**VI. FACTUAL BACKGROUND**

21. On December 11, 2019, President Donald Trump issued Executive Order 13899, directing federal agencies to use the International Holocaust Remembrance Alliance (IHRA) definition of anti-Semitism in enforcing Title VI of the Civil Rights Act.

22. On January 30, 2025, President Trump expanded Executive Order 13899, ordering the Department of Education and Department of Justice to investigate individuals and institutions critical of Israel and to withhold federal funding from universities that allow such criticisms.

23. The IHRA definition of anti-Semitism is overly broad, classifying legitimate criticism of Israel, such as opposition to its settlement policies or its treatment of Palestinians, as hate speech.

4

24. Additionally, the inclusion of Holocaust denial as hate speech under this definition raises concerns, as it conflates historical revisionism with protected speech, stifling open debate and inquiry.

25. The broad scope of this definition infringes upon individuals' rights to express their views on controversial topics, including historical events, without the fear of being unjustly labeled as anti-Semitic.

26. Such overreach threatens the fundamental freedoms guaranteed by the First Amendment to the United States Constitution, which protects speech, thought, and expression in our republic.

27. The 2025 expansion of Executive Order 13899 further empowers the government to initiate criminal investigations based on political thought viewpoints critical of Israel and Judaism, especially in contexts related to public speech, political activism, and individual beliefs.

28. This expansion allows federal authorities to scrutinize individuals, including citizens like Plaintiff, who express opposition to Israeli policies—such as its treatment of Palestinians or settlement activities—and to criticisms of Judaism as a religious and cultural force.

29. It also grants the government the authority to withhold federal funding from institutions, such as universities and nonprofit organizations, that engage in or provide a platform for such criticism, including support for the Boycott, Divestment, Sanctions (BDS) movement, which advocates for non-violent means of pressuring Israel to change its policies.

30. As a Christian Identity believer, Plaintiff holds religious and political convictions that would be unlawfully suppressed through government-directed censorship and the imposition of viewpoint-based restrictions.

31. The challenged Executive Order, in its current and expanded application, not only violates Title VI of the Civil Rights Act of 1964 by selectively enforcing protections based on religious and ethnic affiliation but also actively discriminates against Plaintiff's beliefs by suppressing speech and religious expression that conflict with government-endorsed viewpoints.

32. The government cannot establish a preferred religious or ideological stance while silencing others. The unconstitutional enforcement of Executive Order 13899

disproportionately punishes those who do not conform to state-approved narratives, thereby violating Plaintiff's fundamental rights as a Christian Identity believer and the broader principles of religious freedom and free expression guaranteed by the U.S. Constitution.

## VII. CIVIL RIGHTS COMPLIANCE

33. Plaintiff unequivocally affirms that this action does not seek to diminish or violate the civil rights of any individual or group. Rather, Plaintiff asserts that Executive Order 13899 and its expanded enforcement constitute a direct violation of his civil rights, including those protected under the First Amendment's Free Speech and Free Exercise Clauses.

34. As a Christian Identity believer, Plaintiff holds religious and political convictions that are being unlawfully suppressed through government-directed censorship and the imposition of viewpoint-based restrictions.

35. The challenged Executive Order, in its current and expanded application, not only violates Title VI of the Civil Rights Act of 1964 by selectively enforcing protections based on religious and ethnic affiliation but also actively discriminates against Plaintiff's beliefs by suppressing speech and religious expression that conflict with government-endorsed viewpoints.

36. The government cannot establish a preferred religious or ideological stance while silencing others. The unconstitutional enforcement of Executive Order 13899 disproportionately punishes those who do not conform to state-approved narratives, thereby violating Plaintiff's fundamental rights as a Christian Identity believer and the broader principles of religious freedom and free expression guaranteed by the U.S. Constitution.

## VIII. GOVERNMENT-DIRECTED CENSORSHIP AND SOCIAL MEDIA SUPPRESSION

37. Plaintiff Darrell Leon McClanahan III alleges that his existing censorship on social media platforms will be exacerbated by the enforcement of Executive Order 13899, Will exacerbate censorship thus violating his First Amendment rights. As a Christian identity believer and political candidate, Plaintiff's speech—critical of Zionism, U.S. aid to Israel, and the Anti-Defamation League, speech which some may consider anti-Semitic—has already been suppressed on X (formerly Twitter). His "Missouri Battle Flag" page was removed before the August 6, 2024, Missouri primary, and his "Darrell McClanahan" campaign page faced algorithmic throttling during his campaigns for U.S. Senate (2022), Missouri's Fourth

6

Congressional District, and Governor (2024). This censorship hindered voters' access to his views, constituting election interference intolerable in a free society. Plaintiff asserts that "one man's opinion is another man's hate speech," illustrating the subjective nature of speech interpretation, and that his constitutionally protected criticism of Judaism and Israel is not hate speech.

38. The government's role implicates the First Amendment. The White House Fact Sheet of January 30, 2025 (Exhibit A), expanding Executive Order 13899, directs the Department of Justice to investigate Israel critics, amplifying existing threats to Plaintiff's speech. This follows a pattern of government influence on social media censorship. In Missouri v. Biden (2023), a federal court found government officials within the Biden administration pressured social media companies, specifically Facebook, to suppress political speech. Plaintiff alleges this pattern will now extend to platforms like X, with THE Elon Musk potentially being subjected to similar pressure under the expanded Executive Order by the Trump administration. The government cannot bypass constitutional limits by coercing private entities to silence speech (Norwood v. Harrison, 413 U.S. 455, 469 (1973); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963)). When platforms act as state agents under such pressure, their actions become government censorship subject to First Amendment scrutiny.

39. Social media's dominance supports this claim. Plaintiff contends platforms like X and Facebook function as modern public squares where government influence triggers constitutional protections. The Elon Musk, X's owner, stated, "We call it Freedom of speech, not Freedom of reach," admitting algorithmic suppression despite his free speech stance. Mark Zuckerberg confirmed Facebook removed content at U.S. government request. Substantial governmental control over private censorship transforms those actions into state action (Norwood v. Harrison, 413 U.S. 455 (1973)). Given social media's societal role and potential classification as public utilities, this increased potential for censorship under the expanded Executive Order violates Plaintiff's rights to freely express and disseminate his views, undermining the electorate's ability to judge candidates.

## IX. HYPOCRISY OF THE RESTORING FREEDOM OF SPEECH AND ENDING FEDERAL CENSORSHIP EXECUTIVE ORDER

40. With sanctimonious gall, President Trump issued the Restoring Freedom of Speech and Ending Federal Censorship Executive Order on January 20, 2025, declaring, "Free speech is the bedrock of our constitutional republic. Our Founding Fathers protected this sacred right with the First Amendment to the Constitution. The freedom to express and debate ideas is the foundation for all of

7

our rights as a free people. In a country that has long cherished the freedom of expression, we cannot allow a limited number of pro-Israel lobbies for policies in support of Israel within the United States, hand picking the speech that Americans may access and convey on the internet. This practice is fundamentally un-American and anti-republican." Indeed it is—yet what a hollow pretense flows from one side of Trump's mouth while tyranny pours from the other with Executive Order 13899!

41. This Free Speech Executive Order proclaims, "When large, powerful social media companies censor opinions with which they disagree, they exercise a dangerous power," and warns that platforms like X, Facebook, Instagram, and YouTube "wield immense, if not unprecedented, power to shape the interpretation of public events; to censor, delete, or disappear information; and to control what people see or do not see." Yet, ironically, from the other side of his mouth, EO 13899 directs the government to pursue me for criticizing Israel and Judaism—speech that is my sacred right under our Constitution! How can he laud "the freedom to express and debate ideas" while crushing mine with such force?

42. Trump laments platforms imposing warning labels on tweets in ways that "clearly reflect political bias," but EO 13899 escalates beyond labels—threatening me with criminal investigations and slashing funds from institutions that permit my voice. If this executive can strip universities of funding for daring to host free thought, what's to stop him from stripping my family's Medicaid or my Rural Development loan for daring to speak? As it is written in Luke 6:42, "Thou hypocrite, cast out first the beam out of thine own eye, and then shalt thou see clearly to pull out the mote that is in thy brother's eye." Trump rails against censorship's mote while blind to the tyrannical beam he wields! President Trump deems social media "a 21st-century equivalent of the public square" where "all Americans can and should have a voice," yet EO 13899 silences mine because I refuse to conform to his zog favored narrative on Israel. This is a betrayal of every citizen who understands free speech!

43. And mark this duplicity—the Free Speech Executive Order decries platforms profiting from Chinese disinformation while censoring Americans, yet EO 13899 shields Israel from scrutiny over apartheid, ethnic cleansing, and war crimes—evils documented by Amnesty International and the United Nations—while stifling my right to expose them. One nation faces rebuke, the other enjoys protection? This is not safeguarding expression; it is the very favoritism our Founders abhorred!

44. Trump's Free Speech Executive Order professes to champion "fostering and protecting diverse viewpoints," but EO 13899 crushes mine beneath the vague and overreaching IHRA definition. He cannot justly proclaim liberty from one side of his mouth and wield censorship from the other—either uphold the First Amendment as our constitutional republic demands, or confess the despotism at play. This rank hypocrisy lays bare the sham of EO 13899, and I stand resolute to oppose it!

## X. LEGAL CLAIMS

### COUNT I – VIOLATION OF THE FIRST AMENDMENT (FREE SPEECH)

45. Executive Order 13899 and its enforcement:
    a. Suppresses speech based on viewpoint, which is unconstitutional (Reed v. Town of Gilbert, 576 U.S. 155, 168 (2015)).
    b. Imposes unconstitutional conditions on federal funding by forcing institutions to silence certain perspectives (Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 837 (1995)).

### COUNT II – VIOLATION OF THE FIFTH AMENDMENT (DUE PROCESS CLAUSE)

46. Executive Order 13899 is impermissibly vague, leaving enforcement open to arbitrary government interpretation, which violates the principles of due process. The Supreme Court, in Grayned v. City of Rockford, 408 U.S. 104, 108 (1972), held that laws must be clear enough to provide fair notice of what is prohibited and prevent arbitrary enforcement.

47. The vagueness of the Executive Order creates a chilling effect on free speech by allowing for the punishment of lawful speech based on subjective interpretations.

48. The adoption of the International Holocaust Remembrance Alliance (IHRA) definition of anti-Semitism is too broad and ambiguous, further violating due process. By classifying a wide range of speech and actions as anti-Semitic, the government risks prosecuting individuals in America for protected speech, thus infringing upon their Fifth Amendment right to due process.

### COUNT III – VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

49. The Establishment Clause and Government Neutrality

9

Case 3:25-cv-05025-MDH    Document 1-2    Filed 04/04/25    Page 9 of 14

The Establishment Clause of the First Amendment prohibits the U.S. government from favoring or promoting any religion. Executive Order 13899 violates this constitutional safeguard by:

50. Providing preferential treatment to a politically and religiously affiliated group.

51. Suppressing criticism of that group's policies, even when those policies involve human rights abuses and war crimes.

52. Coercing individuals, institutions, and public entities into adopting a government-endorsed religious-political stance under threat of federal investigation.

53. The Supreme Court has ruled that government actions must maintain neutrality and cannot entangle with religion (Lemon v. Kurtzman, 403 U.S. 602, 1971). Further, in Torcaso v. Watkins (367 U.S. 488, 1961), the Court affirmed that the government cannot impose a religious or ideological test. However, Executive Order 13899 creates a de facto religious test on speech, making criticism of Israel punishable under federal policy while protecting its government from scrutiny.

54. This violates the neutrality requirement established in Larson v. Valente (456 U.S. 228, 1982), where the Court struck down a law that favored certain religious groups over others. Similarly, Executive Order 13899 gives special protections to Zionist political ideology while suppressing speech that exposes human rights violations.

55. Selective Government Protection of Human Rights Abuses and War Crimes
While the U.S. government has historically condemned human rights violations worldwide, Executive Order 13899 selectively shields Israel from scrutiny, despite substantial evidence of human rights abuses and war crimes under international law.

56. War Crimes and Human Rights Violations
Numerous independent human rights organizations, international courts, and legal scholars have documented Israel's ongoing violations of international law, including:

57. Apartheid policies (Amnesty International, Human Rights Watch).

58. Ethnic cleansing and illegal settlement expansion (United Nations Special Rapporteurs).

59. Targeted killing of civilians and journalists (International Criminal Court investigations).

60. Use of collective punishment, a violation of the Geneva Conventions.

61. Under established Supreme Court precedent, the U.S. government cannot protect a religiously affiliated political entity from lawful criticism.

## XI. SUPPORTING DOCUMENTATION

62. The factual allegations presented in this complaint, detailing violations of the First and Fifth Amendments due to the enforcement of Executive Order 13899, are supported by the following attached documents:

63. Exhibit A: Fact Sheet: White House Executive Order 13899, which outlines the specific provisions of the executive order challenged in this complaint.

64. Exhibit B: Sworn Affidavit of Plaintiff, Darrell Leon McClanahan III, which provides firsthand testimony regarding the impact of the executive order on his political speech and religious expression

## XII. RELIEF REQUESTED

65. "I am persuaded that the good sense of the people will always be found to be the best army. They may be led astray for a moment but will soon correct themselves. The people are the only censors of their governors, and even their errors will tend to keep these to the true principles of their institution." – Thomas Jefferson

66. This sacred principle of the people's right to govern, as articulated by Jefferson, underscores the gravity of this petition for relief.

67. WHEREFORE, Plaintiff respectfully requests the following relief:

### A. Declaratory Relief

68. A declaratory judgment that Executive Order 13899 (2019) and its expanded application in 2025 violate:
   a. The First Amendment's Free Speech Clause;

11

Case 3:25-cv-05025-MDH    Document 1-2    Filed 04/04/25    Page 11 of 14

    b. The First Amendment's Establishment Clause;
    c. The Fifth Amendment's Due Process Clause.

69. A declaration that any actions taken under EO 13899's authority are void ab initio.

70. A declaration that the government's application of the IHRA definition constitutes unconstitutional viewpoint discrimination.

## B. Injunctive Relief

71. A preliminary and permanent injunction:
    a. Barring Defendants from enforcing Executive Order 13899 and its expanded provisions;
    b. Requiring immediate cessation of all investigations initiated under EO 13899;
    c. Mandating restoration of any federal funding withheld under the Order;
    d. Prohibiting retaliation against American citizens and lawful residents for protected speech;
    e. Ordering removal of EO 13899 from federal guidance documents and policies.

## C. Temporary Restraining Order

72. Plaintiff respectfully requests the issuance of a Temporary Restraining Order (TRO) to prevent the Defendants from:
    a. Initiating investigations;
    b. Withholding federal funding;
    c. Imposing any punitive measures against American citizens and lawful residents based on speech critical of Israel or U.S. foreign policy;
    d. Directing or encouraging social media platforms to suppress protected speech.

73. Given the chilling effect the Executive Order has on free speech and the risk of irreparable harm to constitutional rights, immediate relief is necessary to preserve the status quo while this case is adjudicated.

## D. Waiver of Security Bond Requirement Under Fed. R. Civ. P. 65(c)

74. Plaintiff requests a waiver of any security bond requirement under Fed. R. Civ. P. 65(c). This complaint is filed in good faith, not only to protect the individual Plaintiff's constitutional rights but also in the broader public interest.

75. In accordance with the First Amendment, which guarantees the right of the people to petition the Government for a redress of grievances, this action seeks to address potential overreach by the government and uphold fundamental constitutional rights.

12

Case 3:25-cv-05025-MDH    Document 1-2    Filed 04/04/25    Page 12 of 14

76. Should it be determined that the government has not violated the Constitution, no harm will have been done, and it would be just to ensure that no retaliatory actions, fines, or fees are imposed on the Plaintiff. Given the imbalance of power between an individual citizen and the vast resources of the federal government, imposing a bond would seem disproportionate and unnecessary, particularly considering the significant constitutional harm at stake.

**E. Request for Oral Arguments and Jury Trial**

77. Plaintiff respectfully requests oral arguments to provide the Court with an opportunity to hear the arguments in person and address any concerns or questions regarding the legal and constitutional matters raised in this case.

78. Plaintiff further requests a jury trial to ensure a fair and impartial review of the constitutional issues at stake in this case.

**F. Additional Relief**

79. Any other relief the Court deems just and appropriate;

80. Costs of this action;

81. Retention of jurisdiction by this Court to ensure full compliance with its orders.

## XIII. CONCLUSION

82. This action is brought not only on behalf of the Plaintiff but in defense of the constitutional rights of all Americans facing similar infringements. While filed individually, this case challenges government overreach and seeks to uphold the foundational principles of our Republic. Those who share these concerns may join, intervene, or support this action as justice requires.

83. This complaint is submitted in good faith and to the best of my knowledge, understanding, and belief, in pursuit of justice and the protection of fundamental rights.

84. Federal courts are the guardians of constitutional liberty, ensuring government accountability by providing citizens with a crucial avenue to challenge abuses of power and uphold the rule of law.

Respectfully submitted,

Executed on: _____

**Darrell Leon McClanahan III**
24346 S. 2425 Rd.
Milo, MO 64767
417-388-9595
darrell4mogov@gmail.com

State - MO

County - Vernon

On this 26th day of March, 2025. Appeared before me, Waylon Harth, as proved to me with his State Issued ID, Darrell L. McClanahan III.

WAYLON DOUGLAS HARTH
Notary Public – Notary Seal
STATE OF MISSOURI
Vernon County
My Commission Expires July 9, 2027
Commission #23569341

Waylon Douglas Harth

14