IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| DARRELL McCLANAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-05025-MDH |
| | ) | |
| DONALD J. TRUMP, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff's *Pro Se* Renewed Motion for a Temporary Restraining Order ("TRO") (Doc. 10). Defendants have filed suggestions in opposition (Doc. 20) and Plaintiff has filed his reply. (Doc. 21). This matter is now ripe for adjudication on the merits. For reasons discussed herein, Plaintiff's Motion for a TRO is **DENIED**.

## BACKGROUND

Plaintiff brings his action challenging the constitutionality of Executive Orders 13899 and 14188 based on alleged violations of his First Amendment Right of free speech, Violation of his Fifth Amendment Right under the Due Process Clause; and violation of the Establishment Clause of the First Amendment. Plaintiff is a resident of Milo, Missouri. Plaintiff is suing President Donald J. Trump in his official capacity as well as the United States Department of Education and the United States Department of Justice.

On December 11, 2019, President Donald Trump issued Executive Order 13899, directing federal agencies to use the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism in enforcing Title VI of the Civil Rights Act. On January 29, 2025, President Trump issued Executive Order 14188 titled Additional Measures to Combat Anti-Semitism. It states that

1

it shall be the policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of *unlawful* anti-Sematic harassment and violence. (Emphasis added). Plaintiff alleges Executive Order 14188 orders the Department of Education and Department of Justice to investigate individuals and institutions critical of Israel and to withhold federal funding from universities that allow such criticisms. Plaintiff alleges that Executive Order 13899 and its expanded enforcement constitute a direct violation of his civils rights. Specifically, Plaintiff brings three counts against Defendants. Court I – Violation of the First Amendment (Free Speech); Count II – Violation of the Fifth Amendment (Due Process Clause); and Count III – Violation of the Establishment Clause of the First Amendment.

Plaintiff brings his renewed motion for TRO after this Court denied his original motion. (Doc. 4). Plaintiff asserts new facts and legal arguments supporting his emergency relief. (Doc. 10). The Court will review Plaintiff's Renewed Motion for TRO based on the standard below.

## STANDARD

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).

## ANALYSIS

Plaintiff expresses concern that the executive order he challenges calls for the Government

2

to retaliate against those who hold beliefs or express opinions critical of the State of Israel or the Jewish community or religion. If that is how the Government interprets the measure or enforces the measure as so applied is certainly problematic under the First Amendment of our Constitution. However, the Court interprets the measure as prioritizing efforts to curtail acts of violence, harassment or discrimination directed toward the Jewish faith and those supportive of the Jewish state rather than to punish those who merely hold opinions critical of these groups. The First Amendment does not protect acts of violence, harassment, or discrimination. In fact, laws long ago enacted prevent acts of violence, harassment and discrimination based on religious beliefs or political opinion. To that extent the Court views the executive orders as a statement of priority or emphasis rather than a change in substantive law.

This Court need and should not decide whether a specific act of governmental retaliation against those who fail to crack down on antisemitic violence, harassment or discrimination is constitutional unless and until that specific issue is presented in a case over which this Court has jurisdiction in which the nature, source and extent of the duty and actions of the target can be specifically established.

If Plaintiff is specifically threatened with governmental action based on the executive order either based on his political or religious beliefs his First Amendment rights may well be found to be infringed. If the governmental action toward him is in response to his acts of violence, harassment or discrimination based on another's religious or political beliefs his acts are without First Amendment protection.

I.   **Success on the Merits**

When evaluating a movant's "likelihood of success on the merits," the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities

3

Case 3:25-cv-05025-MDH    Document 23    Filed 06/09/25    Page 3 of 18

so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). At this preliminary state, the court need not decide whether the party seeking the temporary restraining order will ultimately prevail. *Kersten v. City of Mandan*, 389 F. Supp. 3d 640, 645 (D.N.D. 2019) (citing *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007)). Although a temporary restraining order cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty percent likelihood that he will prevail on the merits.'" *Id*. (quoting *Dataphase*, 640 F.2d at 113). The Eighth Circuit has also held that of the four facts to be considered by the district court in considering relief, the likelihood of success on the merits is "most significant." *Kersten v. City of Mandan*, 389 F. Supp. 3d 640, 645–46 (D.N.D. 2019) (quoting *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992).

Plaintiff identifies five constitutional arguments he believes have a likelihood of succeeding on the merits. Those arguments are First Amendment – Viewpoint Discrimination; First Amendment – Chilling Effect; First Amendment – Right to Petition; Establishment Clause; and Fifth Amendment – Due Process and Vagueness. Defendants argue that Plaintiff has alleged not facts indicating a reasonable belief that he will lose his federal benefits and no link between any prospective loss of his federal benefits and the challenged executive orders.

a. **First Amendment Viewpoint Discrimination**

Plaintiff first argues that Executive Order 13899, by adopting and enforcing the IHRA definition of antisemitism, constitutes impermissible viewpoint discrimination. (Doc. 10, ¶ 37). Specifically, Plaintiff states Executive Order 13899 favors pro-Israel speech while chilling or

4

suppressing criticism of Israeli polices or actions thereby placing a government-imposed restriction on a specific viewpoint. (Doc. 10, ¶ 38).

The government may not discriminate against speech based on the ideas or opinions it conveys. *Rosenberger v. Rector and Visitors of Univ. of VA.*, 515 U.S. 819, 829–830, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). "Content discrimination occurs whenever a government regulates 'particular speech because of the topic discussed or the idea or message expressed.'" *Viewpoint Neutrality Now! V. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 919 (D. Minn. 2021) (quoting *Iancu v. Brunetti*, ---U.S.----, 139 S. Ct. 2294, 2313, 204 L.Ed.2d 714 (2019)). "Viewpoint discrimination occurs whenever a government targets "particular views taken by speakers on a subject." *Viewpoint Neutrality Now! V. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 919 (D. Minn. 2021) (quoting *Rosenberger v. Rector & Visitors of Univ. Of Va.*, 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995)). At its core, then, viewpoint discrimination is "an egregious form of content discrimination." *Id*. An entity engages in viewpoint discrimination when the rationale for its regulation of speech is "the specific motivation ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829, 115 S.Ct. 2510. Every viewpoint discrimination claim "requires, by its very nature, that the purposes or motives of governmental officials be determined." *Gerlich v. Leath*, 861 F.3d 697, 705 (8th Cir. 2017) (quoting *Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361, 367 (8th Cir. 1988)). Viewpoint discrimination can be justified only if the government demonstrates that its regulations is narrowly drawn and is necessary to effectuate a compelling government interest. *Id*.

Here, the Government has supplied its interest within the plain text of each of the challenged Executive Orders. Executive Order 13899 states "[the] Administration is committed to combatting the rise of anti-Semitism and anti-Semitic incidents in the United States and around

5

the world. Anti-Semitic incidents have increased since 2013, and students, in particular, continue to face anti-Semitic harassment in schools and on university and college campuses." Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). Executive Order 14188 states "This order reaffirms Executive Order 13899 … and directs additional measures to advance the policy thereof in the wake of the Hamas terrorist attacks of October 7, 2023, against the people of Israel." Exec. Order No. 14188, Fed. Reg. Doc. 2025-02230 (February 3, 2025). The Government has shown a compelling interest to combat anti-Semitism in school and on university and college campuses that has been on the rise since 2013 and further exacerbated by the Hamas terrorist attacks of October 7, 2023.

Next, the Court must look at whether the regulations are narrowly drawn. Executive Order 13899 states "It shall be the policy of the executive branch to enforce Title VI against prohibited forms of discrimination rooted in anti-Semitism as vigorously as against all other forms of discrimination prohibited by Title VI." Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). Executive Order 14188 states "It shall be the policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence." Exec. Order No. 14188, Fed. Reg. Doc. 2025-02230 (February 3, 2025). Both Executive Order 13899 and 14188 provide a directive to the executive agencies to combat anti-Semitism utilizing the various procedures that have been outlined by law. These executive orders do not "create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019); Exec. Order No. 14188, Fed. Reg. Doc. 2025-02230 (February 3, 2025). Based on the plain text

of the executive orders they are narrowly drawn. For the reasons stated, Plaintiff's likelihood on the merits as to First Amendment viewpoint discrimination is low.

b.  **First Amendment – Chilling Effect**

Plaintiff next argues that the vagueness and overbreadth of Executive Order 13899 creates a chilling effect on his speech by causing him to fear potential government action or reprisal and thus forces him to self-censor his political and religious views. (Doc. 10, ¶¶ 39-40). Defendants argue Plaintiff's allegations amount to a subjective chill rather than a claim of specific present objective harm or threat of future harm.

Self-censorship can itself constitute injury in fact. *281 Care Comm. V. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). *See also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). However, self-censorship based on mere allegations of a "subjective" chill resulting from a statute is not enough to support standing. *Id*. (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). Persons having no fears of prosecution expect those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statue was "objectively reasonable." *281 Care Comm. V. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (quoting *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). Reasonable chill exists when a plaintiff shows "an intention to engage in a course of conduct arguable affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

Here, Plaintiff has failed to show that his self-censorship was objectively reasonable.

7

Plaintiff cites numerous examples that he argues "amplify this chilling effect." (Doc. 10, ¶ 40). Plaintiff cites federal retaliation against universities such as Harvard University for their alleged failure to adequately address campus antisemitism. (Doc. 10, ¶ 15). Plaintiff also cites federal monitoring of political and religious speech by Immigration and Customs Enforcement ("I.C.E.") and U.S. Citizenship and Immigration Services ("U.S.C.I.S.") and Missouri House Legislation Mirroring Executive Order 13899. (Doc. 10, ¶¶ 19, 22). Plaintiff further cites to Department of Education enforcement actions (Doc. 10, ¶ 24), advocacy for zero-tolerance policies by private groups (Doc. 10, ¶ 26), exclusion from the political process by the Missouri Republican Party in 2024 (Doc. 10, ¶ 28), alleged imminent threat to his federal benefits (Doc. 10, ¶ 30) and Executive Order 13899's language and intent. (Doc. 10, 32).

However, Plaintiff fails to show any retaliation or harm suffered by an individual in Plaintiff's position. Plaintiff fails to show how the Missouri State Government, who is not a party to this action, has any bearing on his speech through legislation that hasn't taken effect. Likewise, Plaintiff has failed to show how actions by private parties, not members of this lawsuit, have shown any ability to enforce Executive Orders 13899 or 14188 that are not connected with the current parties to this litigation. Further, Plaintiff claims the imminent loss of federal benefits, but does not point to any other individuals who have lost federal benefits such as rural development loans and Medicaid, based on protected speech and shows no actual harm to date. In sum, Plaintiff's examples shown no credible threat of prosecution to Plaintiff if he engages in a course of conduct, he feels would be affected by Executive Orders 13899 or 14188. For the reasons stated, Plaintiff's likelihood of success based on chilled speech is low.

    c.    **First Amendment – Right to Petition**

Plaintiff argues that the "alleged suppression of information about this case online …

directly infringes on [his] First Amendment right to petition the government for redress of grievances." (Doc. 10, ¶ 41). Specifically, Plaintiff states he has encountered unusual difficulty accessing or locating public information about this case online by utilizing standard search engines like google searches for "challenges to Executive Order 13899". (Doc. 10, ¶ 12). Plaintiff further states "[t]his alleged suppression, if attributable to the Defendants or those acting on their behalf, constitutes a direct infringement on Plaintiff's right to access the courts and participate in the legal process." (Doc. 10, ¶ 14).

The First Amendment guarantees the right of the people "to petition the Government for a redress of grievances." U.S. Const. Amend. I. The people's right to petition the government for a redress of grievances is "among the most precious of the liberties safe-guarded by the Bill of Rights." *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1309 (8th Cir. 1985), *on reh'g*, 797 F.2d 632 (8th Cir. 1986) (quoting *United Mine Works of America, District 12 v. Illinois State Bar Association*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)). It is "implicit in and fundamental to the very idea of a republican form of governance." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (citing *United States v. Cruickshank*, 92 U.S. (2 Otto) 542, 552, 23 L.Ed. 588 (1875)). The government acts on behalf of the people and, "to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1309 (8th Cir. 1985), *on reh'g*, 797 F.2d 632 (8th Cir. 1986) (quoting *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137, 81 S.Ct. 523, 529 (1961)).

Here, Plaintiff simply contends he cannot find anything related to this case when searching on various search engines. Plaintiff makes no connection on how his failure to find information

9

about this case on the internet has restricted Plaintiff's ability to inform the public or to seek legal support. Plaintiff is still able to inform the public about his proceeding and seek legal support to do so. Plaintiff simply makes conclusionary allegations about suppression with no discernible evidence or factual allegations that would implicate the Defendants, let alone any other entity, regarding any restrictions to his First Amendment right to petition the government for a redress of his grievances. As such, Plaintiff's First Amendment right to petition argument holds little chance of succeeding on the merits.

### d. Establishment Clause

Plaintiff argues "[b]y adopting the IHRA definition of antisemitism, which can encompass criticism of religious and political aspects of Isreal, the government effectively endorses a particular religious and ideological perspective" in violation of the Establishment Clause. (Doc. 10, ¶ 42).

The First Amendment to the Federal Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof …." U.S. Const., amend. 1. These two prohibitions are referred to as the Establishment Clause and the Free Exercise Clause of the United States Constitution. *John Doe CS v. Capuchin Franciscan Friars*, 520 F. Supp. 2d 1124, 1135 (E.D. Mo. 2007). "The Establishment Clause … does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce individuals or not." *Id*. (citing *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962)). Government action does not violate the Establishment Clause if it: "(1) has a secular … purpose, (2) neither advances nor inhibits religion in its principal or primary effect, and (3) does not foster an excessive government entanglement with religion." *United States v. Corum*, 362 F.3d 489, 495

10

(8th Cir. 2004) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)).

Here, Plaintiff simply makes conclusory statements arguing Executive Order 13899 effectively endorses a particular religious and ideological perspective just by adopting the IHRA definition of antisemitism. The IHRA defines antisemitism as "a certain perception of Jews, which may be expressed as hatred towards Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities[.]" Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). The purpose of the Executive Order 13899 is to "combat the rise of antisemitism and antisemitic incidents in the Untied States and around the world." *Id*. Executive Order 13899 outlines that "Anti-Semitic incidents have increased since 2013 and students, in particular, continue to face anti-Semitic harassment in schools and on university and college campuses." *Id*. While the executive order does seek to foster protections against a certain religion the purpose of the executive order has a secular purpose as it goes to enforcing the mandate of Title VI. Further, Plaintiff has not shown how Executive Order 13899 either advances or inhibits the practice of religion in its principal or primary effect. Lastly, Plaintiff has not shown how Executive Order 13899 has fostered an excessive government entanglement with religion in promulgating a directive combatting antisemitism. For the reasons stated, Plaintiff's likelihood of success on the merits on his establishment claim argument is low.

e. **Fifth Amendment – Due Process and Vagueness**

Lastly, Plaintiff argues that "Executive Order 13899 employs vague and undefined terms, providing inadequate notice of what conduct is prohibited and allowing for arbitrary and discriminatory enforcement." (Doc. 10, ¶ 43). It is unclear whether Plaintiff is challenging the law

11

as applied or as a facial challenge. Given Plaintiff is looking to have Executive Orders 13899 and 14188 held as unconstitutional, the Court will proceed to review this argument as a facial challenge.

A policy is facially vague where "no standard of conduct is specified at all," such that "men of common intelligence must necessarily guess at its meaning." *Vollmecke v. Indep. Sch. Dist.*, F. Supp. 3d 792, 815 (W.D. Mo. 2024) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971)). Facial challenges succeed where a plaintiff can "demonstrate that the law is impermissibly vague in all of its applications." *Vollmecke v. Indep. Sch. Dist.*, F. Supp. 3d 792, 815 (W.D. Mo. 2024) (citing *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). However, a vague provision is not constitutionally acceptable merely because "there is some conduct that clearly falls within the provisions grasp." *Johnson v. United States*, 576 U.S. 591, 602, 135 S.Ct. 2251, 192 L.Ed.2d 569 (2015).

Plaintiff argues that "the IHRA definition of anti-Semitism is too broad and ambiguous" and that "[b]y classifying a wide range of speech, and actions as anti-Semitic, the government risks prosecuting individuals in America for protected speech[.]" (Doc. 5, ¶ 48). The IHRA defined anti-Semitism as "a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities[.]" Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). The definition adopted by Executive Order 13899 seems clear that antisemitism as a hated toward Jewish individuals brought about by rhetorical or physical manifestations directed toward individuals, their property, and Jewish community institutions and religious facilities. The Court finds on its face the provision

does not rise to the level that men of common intelligence must necessarily guess its meaning. For the reasons stated Plaintiff's likelihood of success on the merits based on a Fifth Amendment Due Process and vagueness argument is low.

## II. Irreparable Harm

"Irreparable harm" signifies harm for which "a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). To qualify, the harm must be "certain and great and of such imminence that there is a clear and present need for equitable relief." *Walls v. Sanders*, 733 F. Supp. 3d 721, 738 (E.D. Ark. 2024) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013)). Plaintiff again cites five arguments why he believes that he will face irreparable harm if a TRO is not granted. Plaintiff cites ongoing suppression of speech; impairment of access to legal and public discourse; fear of retaliation and economic coercion; harm from combined federal and state action; and harm from mischaracterization of speech. The Court will take each in turn.

### a. Ongoing Suppression of Speech

Plaintiff argues that the "chilling effect of [Executive Order] 13899 forces Plaintiff to self-censor his political and religious speech, leading to the ongoing loss of his First Amendment rights." (Doc. 10, ¶ 46). As discussed above, Plaintiff has failed to show any reasonable chill relating to his self-censorship of his political and religious speech. Plaintiff's cited examples which he believes chills free expression does not create a reasonable chill that would constitute irreparable harm. The Court finds Plaintiff at this time has not proven immediate or irreparable harm is likely to happen should he demonstrate his First Amendment rights. For the reasons stated, Plaintiff has failed to show irreparable harm stemming from ongoing suppression of speech.

13

### b. Impairment of Access to Legal and Public Discourse

Plaintiff argues that the "suppression of public information about this case … restricts Plaintiff's ability to inform the public about the issues at stake, seek legal assistance, and effectively participate in the democratic process." (Doc. 10, ¶ 47). As discussed above, Plaintiff has failed to show any tangible suppression of public information about this case. Likewise, Plaintiff does not expound on why not having this case available on the internet suppresses his ability to inform the public or seek legal assistance. Plaintiff is fully capable of alerting the public about this case if he so wished and can seek legal assistance as well. Further, a TRO would do nothing in the way to prevent the harm Plaintiff alleges by virtue of impairment of access to legal and public discourse because the named Defendants in this case do not operate or control the internet, rather the search engines are run by private entities. For the reasons stated, Plaintiff has failed to show irreparable harm stemming from impairment of access to legal and public discourse.

### c. Fear of Retaliation and Economic Coercion

Plaintiff argues that "the administration's punitive actions against institutions… monitoring of online speech by federal agencies, and the credible threat of losing federal benefits create a pervasive climate of fear that discourages dissent and chills free expression." (Doc. 10, ¶ 48). As discussed above, Plaintiff has failed to show any reasonable fear of retaliation or economic coercion. Plaintiff's cited examples which he believes chills free expression does not create a reasonable chill that would constitute irreparable harm. The Court finds Plaintiff at this time has not proven immediate or irreparable harm is likely to happen should he demonstrate his First Amendment rights. For the reasons stated, Plaintiff has failed to show irreparable harm stemming from fear of retaliation and economic coercion.

### d. Harm from Combined Federal and State Action

Plaintiff argues that layered enforcement of speech restrictions at both the federal and state levels create a double chilling effect that significantly amplifies the threat to Plaintiff's First Amendment rights and that combined action poses a greater risk of irreparable harm. (Doc. 10, ¶ 49). Plaintiff argues that Missouri lawmakers are advancing House bill 937, which would codify the IHRA definition of antisemitism into state law and require that schools incorporate it into their codes of conduct. (Doc. 10, ¶ 22).

Plaintiff has failed to demonstrate how prospective legislation, that has yet to be passed or signed into law, has created any reasonable chill to Plaintiff's First Amendment rights. Additionally, as already discussed, Plaintiff has not shown a reasonable basis for the alleged chill he has suffered by self-censoring his speech. The Court finds there to be no immediate or irreparable harm based on state legislation that has yet to be passed or signed into law. Further, it is unclear how a TRO on the federal government would provide any sort of remedy in response to the state legislation. For the reasons stated, Plaintiff has failed to show irreparable harm stemming from any harm brought by the combined federal and state action.

      e.      **Harm from Mischaracterization of Speech**

Plaintiff argues that the provocative and confrontational language of Executive Order 13899 "creates a substantial risk that Plaintiff's legitimate efforts to exercise his First Amendment rights will be mischaracterized as hostile, disruptive, or even criminal, subjecting him to unwarranted legal jeopardy and chilling his right to engage in protected expression." (Doc 10, ¶ 50). Specifically, Plaintiff points to the line "aggressively combat antisemitism in the streets" in support of his argument. *Id*.

The Court having reviewed both the language in Executive Order 13899 and 14188 cannot find the quoted language Plaintiff alludes to in his briefing. Nowhere in either Executive Order

does the term "in the streets" or any variation thereof. The Court does not find any language within either Executive Order that would create a substantial risk of his First Amendment rights being mischaracterized as hostile, disruptive, or criminal. Specifically, Executive Order 13899 even indicates that "agencies shall not diminish or infringe upon any right protected under Federal law or under the First Amendment." Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). For the reasons stated, Plaintiff has failed to show an irreparable harm stemming from mischaracterization of speech.

### III. Balance of Interests

The balance of equities analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and other interested parties, including the public. *Dataphase*, 640 F.2d at 113. In doing so, courts consider the threat to each of the parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and interested third parties, and whether the defendant has already taken remedial action.

Plaintiff argues that the "irreparable harm Plaintiff will suffer without a TRO–the loss of his fundamental First Amendment rights, the chilling of his speech, and the impairment of his access to justice–far outweighs any potential harm to Defendants from a temporary pause on enforcement[.]" (Doc. 10, ¶ 52). Plaintiff further argues that the "government has no legitimate interest in enforcing an Executive Order that violates the U.S. Constitution." (Doc. 10, ¶ 53).

As explained above, Plaintiff has failed to show that irreparable harm will befall him should a temporary restraining order not be granted. Additionally, Plaintiff's allegation that the Executive Order 13899 or 14188 are unconstitutional is conclusory. The Defendants have an interest in enforcing the laws of the United States and directing its own priorities in the accomplishment of that pursuit. Executive Order 13899 states "it shall be the policy of the executive branch to enforce

16

Case 3:25-cv-05025-MDH    Document 23    Filed 06/09/25    Page 16 of 18

Title VI against prohibited forms of discrimination rooted in anti-Semitism as vigorously as against all other forms of discrimination prohibited by Title VI. Exec. Order No. 13899, Fed. Reg. Doc. 2019-27217 (December 11, 2019). The Court finds that the balance of equities tips in favor of Defendants.

IV. **Public Interest**

Lastly, the Court must consider whether the public interest would be served by an injunction. *Sanderson v. Bailey*, 700 F. Supp. 3d 713, 723 (E.D. Mo. 2023), *appeal dismissed*, No. 23-3394, 2023 WL 11159779 (8th Cir. Dec. 11, 2023). Plaintiff argues that the "public interest strongly favors the protection of fundamental constitutional rights, particularly the First Amendment's guarantees of free speech and the Fifth Amendment's guarantee of due process. (Doc. 10, ¶ 55). Plaintiff also argues that the public interest is served by "preserving open and robust debate on matters of public concern, including political issues related to the Middle East. Restricting such disclosure harms the democratic process and the ability of citizens to hold their government accountable." (Doc. 10, ¶ 56).

While Plaintiff is correct the public has an interest in the protection of fundament constitutional rights and the preservation of open and robust debate on matters of public concern, he has failed to show that the public interest would be served by a TRO in this case. Whereas the public interest would be hindered if a TRO was granted as the public has an interest in the enforcement of Title VI and the Government's pursuit of prohibit forms of discrimination rooted in anti-Semitism. The Court finds that the public interest in this case tips in favor of Defendants.

**CONCLUSION**

The Court having considered all factors to determine whether on balance they weigh towards granting a TRO, this Court finds entry of a TRO improper. For foregoing reasons,

Plaintiff's *Pro Se* Renewed Motion for a TRO is **DENIED** without prejudice. If Defendants seek economic harm or federal retaliation on Plaintiff based upon his speech or the current action, Plaintiff may refile his TRO.

**IT IS SO ORDERED**.

DATED: June 9, 2025

                                               */s/ Douglas Harpool*
                                               **DOUGLAS HARPOOL**
                                               **UNITED STATES DISTRICT JUDGE**

18

Case 3:25-cv-05025-MDH   Document 23   Filed 06/09/25   Page 18 of 18