UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

SOUTHWESTERN DIVISION

DARRELL LEON MCCLANAHAN III,

Plaintiff,

Case No.: 3:25-cv-05025-MDH

v.

DONALD J. TRUMP, et al.,

Defendants.

# REVISED MOTION TO RECUSE UNITED STATES DISTRICT JUDGE M. DOUGLAS HARPOOL

## I. INTRODUCTION

Plaintiff Darrell Leon McClanahan III, Pro Se, respectfully moves this Court for the recusal of the Honorable Judge M. Douglas Harpool from any further involvement in this matter. This request is made pursuant to 28 U.S.C. § 455(a), which mandates judicial disqualification in any proceeding where a judge's impartiality "might reasonably be questioned." The standard is objective: whether a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988).

1

The totality of circumstances—including the Court's inconsistent procedural treatment of Plaintiff's pro se filings, Judge Harpool's significant and enduring connections to the Southern Baptist Convention and its affiliated institutions (which hold publicly affirmed pro-Israel stances), and the specific reasoning articulated in the Court's Order (Doc. 23) denying Plaintiff's Renewed Motion for Temporary Restraining Order creates a compelling appearance of partiality necessitating recusal under the objective standard established in United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999).

## II. GOOD FAITH CERTIFICATION

Plaintiff certifies that this motion is made in good faith and is not interposed for purposes of delay or obstruction. Due to the nature of the recusal request, which challenges the court's own impartiality rather than a matter subject to agreement between parties, no meaningful conference with opposing counsel was possible or required.

## III. LEGAL STANDARD FOR RECUSAL

Under 28 U.S.C. § 455(a), a judge must disqualify himself in any proceeding where his "impartiality might reasonably be questioned." This standard is designed to promote confidence in the judiciary by avoiding even the appearance of partiality. Liljeberg, 486 U.S. at 860. The test is objective and does not require proof of actual bias: "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Id. The inquiry focuses on whether "a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality." United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995).

Additionally, 28 U.S.C. § 455(b)(1) requires disqualification where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." While the primary basis for this motion rests on § 455(a)'s appearance standard, the cumulative evidence also raises concerns under § 455(b)(1).

2

## IV. PROCEDURAL INCONSISTENCIES ERODING THE APPEARANCE OF IMPARTIALITY

The Court has exhibited a concerning disparity in its treatment of the pro se Plaintiff's filings, which undermines the appearance of fair process and contributes to reasonable questioning of impartiality under § 455(a). Courts have recognized that inconsistent treatment of litigants can create an appearance of partiality. See In re IBM Corp., 618 F.2d 923, 926 (2d Cir. 1980).

Initially, Plaintiff submitted a clearly labeled and unsigned "Example of Proposed Temporary Restraining Order" (Dkt. 1-3), consistent with guidance received from court staff. Despite its explicit designation as an example, the Court treated it as a formal motion, issuing an order denying it (Dkt. 4) and subsequently denying reconsideration even after Plaintiff clarified the clerical misunderstanding (Dkt. 9).

Conversely, the Court strictly enforced formal procedural rules by requiring Plaintiff's formal signature on all summonses intended for U.S. Marshal service (Dkt. 13). This dichotomy—a lenient approach to converting an informal example into a formal ruling while demanding strict adherence to formal requirements elsewhere—raises legitimate concerns about the equitable application of procedural rules to a pro se litigant.

This inconsistent treatment, even if the Court previously found no "procedural inconsistency" in its Order denying Plaintiff's earlier recusal motion (Doc. 16), contributes to a reasonable question about the Court's impartiality, given the principles outlined in Erickson v. Pardus, 551 U.S. 89, 94 (2007), which affirms that pro se litigants are entitled to less stringent standards. Such procedural inconsistencies, especially when combined with other substantive concerns, contribute to a reasonable question about the Court's impartiality under the objective standard of § 455(a).

## V. JUDGE HARPOOL'S DEEP-ROOTED TIES TO SOUTHWEST BAPTIST UNIVERSITY AND THE SOUTHERN BAPTIST CONVENTION CREATING APPEARANCE OF PARTIALITY

A. Extensive Religious and Institutional Affiliations

Judge Harpool's extensive local and religious affiliations present a significant basis for questioning his impartiality in a case directly challenging Executive Orders related to the protection of Israel. His lifelong residency in Springfield, Missouri, is coupled with a decades-long tenure as a Deacon at South Haven Baptist Church since 1964. This sustained religious leadership role places him squarely within the framework of the Southern Baptist Convention (SBC), an organization with clearly articulated and robust positions on matters directly relevant to this litigation.

While religious affiliation alone does not require recusal, the intersection of Judge Harpool's prominent leadership position with the specific constitutional issues in this case creates a reasonable appearance of partiality under the totality of circumstances test. See Chisom v. Roemer, 853 F.2d 1186, 1193 (5th Cir. 1988) (considering institutional affiliations in recusal analysis).

B. Denominational Positions on Israel

Southwest Baptist University (SBU), a prominent institution in the region with which Judge Harpool maintains ties, is affiliated with both the Missouri and Southern Baptist Conventions. These conventions have publicly expressed strong theological and political support for the state of Israel through official resolutions and policy statements. Resolutions and statements from the Southern Baptist Convention and its Ethics & Religious Liberty Commission (ERLC) consistently affirm Israel's right to exist and defend itself.

Notably, data from the Pew Research Center indicates that a significant majority (82%) of White evangelicals, the dominant demographic within the SBC, believe in a divine grant of the land of Israel to the Jewish people. The SBC has passed numerous resolutions supporting Israel, including resolutions adopted in 2007 and reaffirmed multiple times thereafter.

## C. Active Leadership Role and Ongoing Institutional Connections

Judge Harpool's active role as a Deacon signifies a leadership position within a denomination that holds these overt pro-Israel views. As a Deacon, his responsibilities likely involve church governance and the reinforcement of the denomination's core beliefs, suggesting more than passive membership in an organization with relevant institutional positions.

Furthermore, Judge Harpool's prior speaking engagements at SBU demonstrate an ongoing and active connection with an institution that actively promotes pro-Israel perspectives in its academic and community programming.

## D. Precedent for Recusal in Cases Involving Israel-Palestine Issues

Recent precedent supports recusal in cases involving Israel-Palestine issues where judges have institutional connections that might create an appearance of partiality. U.S. Circuit Judge Ryan Nelson of the 9th U.S. Circuit Court of Appeals recused himself from hearing a bid by Palestinian rights activists to block the Biden administration's military support of Israel after he joined a delegation of judges for a trip to the country following the Oct. 7 Hamas attack.

Judge Nelson, in his recusal order, acknowledged that it was "far from certain that an objective observer would reasonably question my impartiality," but stated that "out of an abundance of caution," he would recuse himself from the case. The March trip was organized by the World Jewish Congress, and the delegation "met with Israelis affected by the October 7 assaults, saw towns affected by Hamas, and heard from specialists on international legal matters." The plaintiffs argued that the trip appeared "designed to influence U.S. judicial opinion regarding the legality of Israeli government actions that are a core issue in this case," raising questions about the judge's impartiality.

Judge Nelson's recusal demonstrates that federal judges recognize the importance of avoiding even the appearance of partiality in cases involving Israel-Palestine issues, even when the connection might be considered attenuated. Here, Judge Harpool's decades-long leadership role in organizations with official pro-Israel positions, combined with ongoing institutional connections to SBU, presents a far more substantial and enduring connection to pro-Israel advocacy than Judge Nelson's single educational trip.

This precedent reinforces that the objective standard of § 455(a) requires careful consideration of institutional affiliations and their relationship to the specific constitutional issues at stake, particularly in cases involving Israel-Palestine matters where public confidence in judicial neutrality is paramount.

E. Reasonable Questioning of Impartiality

Given that the Plaintiff's lawsuit directly challenges Executive Orders protecting Israel from criticism on constitutional grounds, Judge Harpool's deep and visible connections to an academic and religious community strongly aligned with pro-Israel views create a legitimate and reasonable concern under the objective standard. A reasonable person, aware of these decades-long institutional affiliations and leadership roles, might question whether Judge Harpool can approach the constitutional questions in this case with complete impartiality.

This creates an appearance of partiality under 28 U.S.C. § 455(a), as the judge's institutional connections intersect directly with the subject matter of the constitutional dispute before the Court. The recent precedent of Judge Nelson's recusal in a similar context demonstrates the appropriateness of such disqualification when institutional connections to pro-Israel positions intersect with cases involving Israel-Palestine issues.

VI. THE COURT'S ORDER (DOC. 23) DEMONSTRATES JUDICIAL STATEMENTS RAISING CONCERNS ABOUT PREDETERMINED VIEWS

The Court's Order of June 9, 2025 (Doc. 23), denying Plaintiff's Renewed Motion for Temporary Restraining Order, contains specific reasoning and findings that further contribute to the reasonable questioning of impartiality under § 455(a). While these may represent legitimate judicial reasoning, when viewed alongside the other circumstances, they contribute to the cumulative appearance of partiality.

A. Judicial Deference to Foreign Geopolitical Interests Over Paramount U.S. Free Speech Rights

The Court's Order explicitly grounds the U.S. Government's "compelling interest" for Executive Order 14188 in a foreign geopolitical event. The Order states that Executive Order 14188 "reaffirms Executive Order 13899 ... and directs additional measures to advance the policy thereof in the wake of the Hamas terrorist attacks of October 7, 2023, against the people of Israel." (Doc. 23, at 5, emphasis added). The Court further found that the Government has shown a "compelling interest to combat anti-Semitism... further exacerbated by the Hamas terrorist attacks of October 7, 2023." (Doc. 23, at 5).

This judicial framing, which directly ties the justification for domestic U.S. policy impacting free speech to the specific security concerns of a foreign nation, might suggest to a reasonable observer an undue deference to foreign interests. When combined with Judge Harpool's institutional affiliations with organizations holding official pro-Israel positions, this reasoning contributes to the reasonable questioning of impartiality under § 455(a).

B. Categorical Dismissal of "Objectively Reasonable" Chilling Effect Despite Concrete Evidence of Prior Targeting

The Court summarily rejected Plaintiff's claim of an "objectively reasonable" chilling effect on his speech, stating that Plaintiff "failed to show any retaliation or harm suffered by an individual in Plaintiff's position" or a "credible threat of prosecution." (Doc. 23, at 7).

7

This conclusion appears to disregard specific, documented instances of Plaintiff's speech being targeted and subjected to legal and political scrutiny.

1. Prior Federal Court Order (The ADL Order): Plaintiff was subjected to direct judicial scrutiny where a federal court order (Doc. 28 in Darrell McClanahan v. Anti-Defamation League, Case No. 23-05076-CV-SW-JAM) explicitly noted that Plaintiff "holds the views ascribed to him by the ADL article, that is, the characterization of his social media presence and views as antisemitic, White supremacist, anti-government, and bigoted." This order, while recognizing Plaintiff's right to express his views, nonetheless compelled Plaintiff to engage in litigation to defend his speech, providing tangible proof of actual legal jeopardy and societal scrutiny.

2. Direct Targeting in Political Process (Cole County Case): Plaintiff was directly targeted within the political process when the Missouri Republican State Committee sought to remove him from the Republican primary ballot for Governor, citing concerns about his speech being "racist or antisemitic," based in part on the ADL article. (See Missouri Republican State Committee v. Secretary of State and Darrell McClanahan III, Case No. 24AC-CC02151). The initiation of this lawsuit by a powerful political entity to exclude Plaintiff from the democratic process based on the content of his speech demonstrates a tangible effort to suppress his expression.

This removal attempt was explicitly based on the same expressive conduct that Plaintiff asserts is chilled by the Executive Orders in question. The Missouri Circuit Court of Cole County recognized the controversy but ultimately upheld Plaintiff's candidacy, confirming that Plaintiff's political speech was, in fact, subject to state-level opposition and adjudication based on its content and perceived antisemitic nature. This sequence of events constitutes a credible threat of future suppression, especially under the ambiguous and expansive language of Executive Order 14188.

These examples clearly support Plaintiff's contention that his expressive conduct has already been met with governmental and institutional hostility thereby reinforcing an "objectively reasonable" fear that continued speech of a similar nature may trigger investigation, suppression, or further legal retaliation under the Executive Orders at issue.

8

The Court's categorical rejection of Plaintiff's "objectively reasonable" fear, in light of these documented prior legal and political challenges directly tied to the characterization of his speech as "antisemitic" under the very definitions the Executive Orders promulgate, might appear to a reasonable observer as reflecting predetermined conclusions about the merits of Plaintiff's First Amendment claims. The Court's conclusion to the contrary—especially when viewed through the lens of Judge Harpool's personal and institutional affiliations—may reasonably be perceived as dismissive of Plaintiff's real-world experience, raising further doubts about judicial neutrality. When viewed alongside the other circumstances, this contributes to the reasonable questioning of impartiality under § 455(a).

C. Factual Determinations Regarding Executive Order Text and Plaintiff's Argumentative Basis

The Court expressly stated it "cannot find the quoted language Plaintiff alludes to in his briefing. Nowhere in either Executive Order does the term 'in the streets' or any variation thereof" appear. (Doc. 23, at 15).

Plaintiff's argument regarding the phrase "aggressively combat antisemitism in the streets" was based on official Executive Branches publicly posted communications, specifically the "Fact Sheet: Combating Anti-Semitism in the United States" (Doc. 3, Exhibit A, attached to Plaintiff's earlier filing), which articulates the aggressive and broad scope of these Executive Orders, indicating an intent to monitor and potentially suppress speech in public spaces.

While the Court's factual finding may be legally defensible, the specific assertion that the language appears "Nowhere in either Executive Order," without acknowledging or addressing the Plaintiff's reliance on related Executive Branch communications articulating the intent behind the Orders, might suggest to a reasonable observer a predetermined approach to evaluating Plaintiff's evidentiary submissions. When considered alongside the other circumstances, this contributes to the cumulative concern about the appearance of impartiality under § 455(a).

9

## VII. CUMULATIVE EFFECT WARRANTS REASONABLE QUESTIONING OF IMPARTIALITY

Though any one of the factors described above might not independently compel recusal, the cumulative effect—procedural inconsistencies, Judge Harpool's institutional affiliations with organizations holding official pro-Israel positions, and the Court's substantive legal analysis prioritizing foreign policy considerations over domestic First Amendment rights—meets the objective standard for disqualification under 28 U.S.C. § 455(a).

As the Supreme Court emphasized in Liljeberg, 486 U.S. at 861, "[t]he judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue"—rather, what matters is whether the average citizen, informed of the facts, would reasonably question the judge's impartiality. Here, the average citizen, particularly one informed of the judge's religious and academic affiliations and the broader political context, could reasonably harbor such doubts.

Under the totality of circumstances test established in Jordan and Liljeberg, the combination of: (1) inconsistent procedural treatment suggesting disparate handling of pro se filings; (2) Judge Harpool's decades-long leadership role in a denomination with official positions supporting Israel and ongoing institutional connections to SBU; and (3) the specific reasoning patterns in the Court's Order that might suggest predetermined approaches to the constitutional questions at stake, creates a reasonable appearance of partiality.

Maintaining public trust in the fairness and objectivity of the judiciary requires disqualification in this instance. The objective standard of § 455(a) is designed to ensure that justice not only is done, but appears to be done. Liljeberg, 486 U.S. at 860.

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that Judge M. Douglas Harpool recuse himself from further proceedings in this matter. While Plaintiff does not suggest actual bias or question Judge Harpool's integrity, the objective standard of § 455(a) requires recusal when the totality of circumstances might lead a reasonable person to question a judge's impartiality. The integrity of the judicial process and the appearance of fairness, particularly in a case implicating fundamental constitutional rights, demand adherence to the high standards of judicial impartiali

## IX. PRAYER FOR RELIEF

WHEREFORE,

1. Plaintiff respectfully requests the following relief.

2. That Judge M. Douglas Harpool recuse himself from all further proceedings in this case.

3. That this case be reassigned to a different judge in the Western District of Missouri.

4. That any orders entered by Judge Harpool in this matter be reviewed de novo by a newly assigned judge.

5. That Plaintiff be granted any other and further relief that this Court deems just and proper.

Respectfully submitted,

Darrell Leon McClanahan III