IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DARRELL McCLANAHAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:25-cv-05025-MDH |
| DONALD J. TRUMP, et. al., | ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants' Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim. (Doc. 41). Defendants filed suggestions in support, Plaintiff filed suggestions in opposition (Doc. 42) and Defendants have replied. (Doc. 46). Additionally, before the Court is Plaintiff's *Pro Se* Motion for Leave to File an Amended Complaint. (Doc. 56). Plaintiff filed suggestions in support, Defendants filed suggestions in opposition (Doc. 57) and Plaintiff has filed a reply. (Doc. 58). The motions are now ripe for adjudication on the merits. For the reasons discussed herein, Defendants' Motion to Dismiss for Lack of Jurisdiction is **GRANTED**, Defendants' Motion to Dismiss for Failure to State a Claim is **FOUND AS MOOT,** and Plaintiff's *Pro Se* Motion for Leave to File an Amended Complaint is **DENIED.**

## BACKGROUND

Plaintiff brings his action challenging the constitutionality of Executive Orders 13899 and 14188 based on alleged violations of his First Amendment Right of free speech, violation of his Fifth Amendment Right under the Due Process Clause; and violation of the Establishment Clause of the First Amendment. Plaintiff is a resident of Milo, Missouri. Plaintiff is suing President

1

Donald J. Trump in his official capacity as well as the United States Department of Education and the United States Department of Justice.

On December 11, 2019, President Donald Trump issued Executive Order 13899, directing federal agencies to use the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism in enforcing Title VI of the Civil Rights Act. On January 29, 2025, President Trump issued Executive Order 14188 titled *Additional Measures to Combat Anti-Semitism*. It states that "it shall be the policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of *unlawful* anti-Sematic harassment and violence." (Emphasis added). Plaintiff alleges Executive Order 14188 orders the Department of Education and Department of Justice to investigate individuals and institutions critical of Israel and to withhold federal funding from universities that allow such criticisms. Plaintiff alleges that Executive Order 13899 and its expanded enforcement constitute a direct violation of his civils rights. Specifically, Plaintiff brings three counts against Defendants. Court I – Violation of the First Amendment (Free Speech); Count II – Violation of the Fifth Amendment (Due Process Clause); and Count III – Violation of the Establishment Clause of the First Amendment.

Defendants bring their current motion seeking to dismiss Plaintiff's Complaint for lack of jurisdiction arguing that Plaintiff has failed to establish standing in this case. Alternatively, Defendants argue that Plaintiff has failed to state a claim for relief and thus this Court should dismiss Plaintiff's Complaint. The Court will evaluate each of Defendants' Motions in turn.

**STANDARD**

"In order to properly dismiss [a case] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness

of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, the court "restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* In a factual attack, "the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* Dismissal is appropriate in such cases where, upon weighing the evidence, the court is not satisfied that the plaintiff has, in fact, proved jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## ANALYSIS

### I. Motion to Dismiss for Lack of Jurisdiction

Defendants alleges that Plaintiff alleges four injuries: (1) a chilling effect on free speech, (2) a potential loss of his children's Medicaid benefits and his own Rural Development government home loan, (3) due process violations and (4) online content restrictions. Defendants argue that Plaintiff's first three allegations of injury do not allege any injury-in-fact, a necessary prerequisite to standing. As to the online content restrictions, Defendants argue that Plaintiff fails to allege whether or how Defendants carried out the restrictions pursuant to the executive orders and thus fails to allege how a judgment declaring the executive orders unconstitutional would redress his alleged injury. Plaintiff argues that he properly has standing and that he has injury-in-fact on all four of his injuries. Plaintiff also argues that a declaratory judgment from this Court would redress his injuries as such a declaration would remove the governmental imprimatur and directive behind

3

the expanded definition of "antisemitism" and the associated enforcement policies, thereby alleviating the chilling effect on his speech, removing the direct threat to his federal benefits, and mitigating the government influenced online censorship.

To establish Article III standing, which limits federal judicial authority to the resolution of "cases and controversies," as the Constitution requires, the plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Denmon v. Kansas Couns., Inc.*, No. 23-3612, 2025 WL 2329189, at *1 (8th Cir. Aug. 13, 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021)). "[T]he concrete harm inquiry is fact specific." *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 n.4 (8th Cir. 2022). "The party invoking federal jurisdiction bears the burden of establishing" he or she suffered a concrete injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In general, allegations of intangible injury such as distress and alarm "fall short of cognizable injury as a matter of general tort law." *Ojogwu*, 26 F.4th at 462 (quotation omitted).

### A. Chilling Effect on Free Speech

Defendants argue that Plaintiff's assertion that his speech has been chilled are purely subjective, and thus are not sufficient to confer jurisdiction on this Court. Plaintiff argues that the chilling effect on free speech is objectively reasonable and palpable fear stems directly from the Executive Orders. Plaintiff argues that the explicit declaration of intent to "hold to account" citizens for speech deemed "antisemitic" creates an immediate and actional chilling effect.

Self-censorship can itself constitute injury in fact. *281 Care Comm. V. Arneson*, 638 F.3d

4

Case 3:25-cv-05025-MDH    Document 60    Filed 09/30/25    Page 4 of 14

621, 627 (8th Cir. 2011). *See also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). However, self-censorship based on mere allegations of a "subjective" chill resulting from a statute is not enough to support standing. *Id*. (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). Persons having no fears of prosecution expect those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statue was "objectively reasonable." *281 Care Comm. V. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) (quoting *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). Reasonable chill exists when a plaintiff shows "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).

Plaintiff has failed to show that his self-censorship was objectively reasonable and thus has failed to show an injury-in-fact as to chilling effect on his free speech. Plaintiff's Complaint as it relates to his claims of standing on the chilling effect on free speech states:

> The Fact Sheet's language, particularly the stated focus on enforcement on American streets, creates uncertainty about what speech might be deemed unlawful, compelling me to self-censor my political and religious viewpoints to avoid potential prosecution. Courts have recognized that government policies creating ambiguity and fear of punishment violate the First Amendment. Grayned v. City of Rockford, 408 U.S. 104 (1972).

(Complaint ¶ 15). Plaintiff in addition to his Complaint has submitted what Plaintiff has marked as "Exhibit A" which is a printout of an online fact sheet published by the White House titled *Fact Sheet; President Donald J. Trump Takes Forceful and Unprecedented Steps to Combat Anti-Semitism*. (Doc. 5-2); *see also* The White House, *Fact Sheet; President Donald J. Trump Takes*

*Forceful and Unprecedented Steps to Combat Anti-Semitism*, (January 30, 2025), https://www.whitehouse.gov/fact-sheets/2025/01/fact-sheet-president-donald-j-trump-takes-forceful-and-unprecedented-steps-to-combat-anti-semitism/. The fact sheet in relevant part states:

> Immediate action will be taken by the Department of Justice to protect law and order, quell pro-Hamas vandalism and intimidation, and investigate and punish anti-Jewish racism in leftist, anti-American colleges and universities. The order demands the removal of resident aliens who violate our laws. . . . Aggressively enforce the law, protect public order, and prosecute anti-Semitic crimes: "I will issue clear orders to my Attorney General to aggressively prosecute terroristic threats, arson, vandalism and violence against American Jews."

*Id*. While the fact sheet contains inflammatory political rhetoric, it does nothing but reinforce the stated laws already passed by Congress, that is enforcement of any crimes against a particular religious sect. While the Trump Administration has the right to signal its proprieties through Executive Orders, Plaintiff has failed to show how the Executive Orders, or even the Fact Sheet create an objectively reasonable chill. These Executive Orders, or the Fact Sheet, does nothing that would prohibit any speech that is protected by the First Amendment. Plaintiff has failed to show a credible threat of prosecution. Plaintiff identifies no party in a similar situation that has been prosecuted based off of these Executive orders. Plaintiff himself has not faced any adverse consequences based on his First Amendment speech by Defendants. Nor do these Executive Orders bar any speech that would otherwise be prohibited. In sum, Plaintiff's subjective chill based on speculation of what might occur should he exercise his First Amendment is not enough in this case to establish an injury-in-fact. For the reasons stated, Plaintiff has failed to show an injury-in-fact as to his allegation of a chilling effect on his free speech.

  **B.**  **Potential Loss of Benefits and Government Loans**

Defendants argue that Plaintiff's allegation that he and his children could face a potential loss of federal benefits is not sufficient to establish an injury-in-fact. Additionally, Defendants

argue that Plaintiff has alleged no facts indicating that he will lose his federal benefits as a result of his speech, nor otherwise be subject to any harm. Plaintiff argues that federal agencies administering Medicaid and federal housing loans are bound by the Executive Orders. Plaintiff argues that if his speech is nonetheless labeled "antisemitic" under the Executive Orders' broad directive, the threat to his and his family's benefits become imminent and concrete.

Plaintiff has failed to establish an injury-in-fact as to the potential loss of benefits and government loans. Plaintiff's Complaint alleges:

> My four children rely on Medicaid, a government benefit, for essential healthcare. The potential loss of this benefit, due to the administration's policy of withholding federal funding based on certain speech, directly threatens their access to necessary medical care. Additionally, I am a recipient of a Rural Development government home loan, crucial for my family's financial stability. The administration's policy of withholding federal funding based on certain speech demonstrates a willingness to use economic leverage to regulate expression. These concerns are not speculative, but grounded in established legal precedent, where selective enforcement and indirect coercion were deemed unconstitutional. Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013).

(Complaint ¶ 16). Plaintiff's Complaint fails to show any concrete and particularized injury. Plaintiff has yet to suffer any adverse consequence from Defendants based upon his speech. Plaintiff makes conclusionary statements about the administration's policy of withholding federal funding based on certain speech, but has failed to show any individuals in a similar position losing benefits to Medicaid or a rural development home loan by Defendants or their policies. Plaintiff cites to *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) to support his proposition that his concerns are not speculative. However, the Supreme Court in that case found that Plaintiffs failed to demonstrate the future injury they purportedly feared was certainly impending and failed to establish the future injury they purportedly feared was fairly traceable to the FISA provision at issue. *Id.* Plaintiff has provided no evidence in his Complaint that his purported fears of the loss of benefits are anything more than speculative. For the reasons

stated, the Court finds Plaintiff has failed to establish an injury-in-fact as to the potential loss of benefits and government loans.

### C. Due Process Violations

Defendants argue that Plaintiff's assertion of a due process violation contains no detail as to any proceeding where he has been denied due process and is not sufficient to grant this Court jurisdiction. Plaintiff argues that when the Government issues an Executive Order defining what speech might lead to "prosecution, removal, or holding to account," that definition must provide fair notice. Plaintiff further argues that those ambiguities within the IHRA definition, particularly its application to criticism of Israel, denies fair notice to citizens, thereby creating an imminent threat of arbitrary enforcement without due process.

Plaintiff has failed to establish an injury-in-fact as to his alleged due process violations. Plaintiff's Complaint alleges "[t]he Order's vague definition of "anti-Semitic crimes" lacks clear statutory guidance, raising serious Fifth Amendment concerns regarding fair notice and potential arbitrary enforcement. FCC v. Fox Television Stations, Inc., 567 U.S. 239 (2012)." (Complaint ¶ 17). However, Plaintiff has alleged no facts that show he has suffered a concrete or particularized harms. As stated earlier, "the concrete harm inquiry is fact specific." *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 n.4 (8th Cir. 2022). "The party invoking federal jurisdiction bears the burden of establishing" he or she suffered a concrete injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In general, allegations of intangible injury such as distress and alarm "fall short of cognizable injury as a matter of general tort law." *Ojogwu*, 26 F.4th at 462 (quotation omitted). Plaintiff has not stated any injury-in-fact he has suffered and instead cites only to a speculative harm to his Fifth Amendment rights in general. For these reasons,

the Court finds Plaintiff has failed to establish an injury-in-fact as to his alleged due process violations.

D. **Online Content Restrictions**

To satisfy the traceability requirement, the plaintiff needs to show "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This connection does not have to be direct or absolute, but it does need to be more than speculative. In other words, the plaintiff must show that its injuries arise, at least in part, from the defendant's actions or potential actions. *Stanley M. Herzog Found. V. Equal Emp. Opportunity Comm'n*, 781 F.Supp.3d 897, 911 (W.D. Mo. 2025); *see also California v. Texas*, 593 U.S. 659, 669, 141 S.Ct. 2104, 210 L.Ed.2d 230 (2021) (finding no traceability where defendant could not enforce challenged provision against plaintiff). Similarly, to satisfy the redressability requirement, the plaintiff must show a reasonable likelihood that the requested relief will address some injury the plaintiff faces. *Stanley M. Herzog Found. v. Equal Emp. Opportunity Comm'n*, 781 F.Supp.3d 897, 911 (W.D. Mo. 2025); *see also Massachusetts v. EPA*, 549 U.S. 497, 518, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007). "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982).

Defendants argue that Plaintiff fails to allege whether or how Defendants carried out the restrictions pursuant to the executive orders and thus fails to allege how a judgment declaring the executive orders unconstitutional would redress his alleged injury. Plaintiff argues that a declaratory judgment from this Court would redress his injuries as such a declaration would

remove the governmental imprimatur and directive behind the expanded definition of "antisemitism" and the associated enforcement policies, thereby alleviating the chilling effect on his speech, removing the direct threat to his federal benefits, and mitigating the government influenced online censorship.

Plaintiff has failed to establish the traceability of his alleged online content restrictions by Defendants. Plaintiff's Complaint alleges:

> The federal government has previously exerted pressure on social media platforms and institutions to suppress speech (as evidenced in Missouri v. Biden). I have personally experienced online content restrictions when discussion political issues related to Israel, further reinforcing the likelihood that government influence extends beyond direct legal actions. Norwood v. Harrison, 413 U.S. 455 (1973).

(Complaint ¶ 18). Plaintiff alleges he has personally experienced online content restrictions but fails to allege any facts that would demonstrate that Defendants are responsible for said online content restrictions. Plaintiff argues that *Missouri v. Biden*, 83 F.4th 350 (5th Cir.), *cert. granted sub nom. Murthy v. Missouri*, 144 S.Ct. 7, 217 L.Ed.2d 178 (2023), and *rev'd and remanded sub nom. Murthy v. Missouri*, 603 U.S. 43, 144 S.Ct. 1972, 219 L.Ed.2d 604 (2024) shows that the Government has previously exerted pressure on social media platforms and institutions to suppress speech.[1] However, Plaintiff fails to show that the case he cites was reversed and remanded by the Supreme Court of the United States. *See Murthy v. Missouri*, 603 U.S. 43, 144 S.Ct. 1972, 219 L.Ed.2d 604 (2024). The Court reversed and remanded the Fifth Circuit decision, finding that the States failed to establish that past social-media restriction of a state representative's post was

---

[1] The case *Missouri v. Biden* that Plaintiff cites alleges that during the 2020 election season and the COVID-19 pandemic, social-media platforms frequently removed, demoted, or fact checked posts containing allegedly false or misleading information. At the same time, federal officials, concerned about the spread of "misinformation" on social media, communicated extensively with the platforms about their content-moderation efforts. The plaintiffs, two States and five social-media users, sued dozens of Executive Branch officials and agencies, alleging that they pressured the platforms to suppress protected speech in violation of the First Amendment. The Fifth Circuit agreed, concluding that the officials' communications rendered them responsible for the private platforms' moderation decisions.

traceable to the Centers for Disease Control and Prevention's (CDC) communications with platforms, and thus there was not evidence of expected future harm required for Article III standing. *Id*. The Court also found that certain social-media users failed to establish that past restrictions were traceable to defendants; plaintiffs failed to demonstrate that their alleged injuries were redressable by enjoining Government defendants among other reasons for dismissing the case based on standing. *Id*. Plaintiff's Complaint fails for similar reasoning. He has failed to show traceability as to the Government's role in the alleged online content restrictions he claims. Plaintiff has failed to allege any facts that would demonstrate the Defendants in this case had any bearing on the decisions of those social media companies. For the reasons stated, Plaintiff has failed to establish the traceability of his alleged online content restrictions by Defendants.

Plaintiff has failed to establish standing as to any of his claims and thus the Court finds that Plaintiff does not have standing in this Court for his causes of action. For the reasons stated, Defendants' Motion to Dismiss for Lack of Jurisdiction is **GRANTED**.

## II. Motion to Dismiss for Failure to State a Claim

Defendants next argue that Part I of the Court's June 9, 2025, Order denying Plaintiff's Motion for a Temporary Restraining Order detailed the inadequacies of Plaintiff's Complaint and have adopted those rationales as part of their Motion to Dismiss. The Court, already having granted Defendants' Motion to Dismiss for Lack of Jurisdiction, need not further evaluate the arguments in Defendants' Motion to Dismiss for Failure to State a Claim. For the reasons stated, Defendants' Motion to Dismiss for Failure to State a Claim is **FOUND AS MOOT**.

## III. Motion for Leave to File an Amended Complaint

Plaintiff asks the Court for leave to file an Amended Complaint. Plaintiff wishes to submit an Amended Complaint stating he seeks:

> To amend his original Complaint to include all factual allegations, legal arguments, religious evidence, and citations that have become relevant or more clearly defined since the initial filing. This includes:
>
> - Arguments concerning the Establishment Clause.
> - Evidence of Viewpoint Discrimination.
> - Specific factual allegations and direct citations showing standing.
> - References to Christian Identity beliefs, including baptism, crucifixion, and related religious doctrine.
> - Equal Protection under the law claims under the U.S. Constitution.

(Doc. 56, pages 1-2). Defendants argue that the Proposed Complaint includes no factual allegations which cure the deficiencies previously identified in the Court's Order denying Plaintiff's Motion for a Temporary Restraining Order (Doc. 23) and Defendants' Motion to Dismiss. (Doc. 41).

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. Specifically, it states:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only when the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). A Court does not abuse its discretion in denying a motion for leave to amend when there are "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Anderson v. Bank of the W.*, 23 F. 4th 1056, 1060 (8th Cir. 2022) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065

(8th Cir. 2005). The Eighth Circuit has defined futility in the leave-to-amend content to mean that "the amended complaint could not withstand a Rule 12 motion," and has evaluated whether a proposed amended complaint could "survive a motion to dismiss for lack of standing." *Burgess v. CS3 BP Assocs, LLC*, No. 4:22-CV-00063-SRC, 2022 WL 2643505, at *6 (E.D. Mo. July 8, 2022); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

The record indicates that service of Plaintiff's Compliant was executed on June 25, 2025. Plaintiff could have amended his Complaint as a matter of course on or before July 16, 2025. Plaintiff filed his Motion for Leave to File an Amended Complaint on August 28, 2025, and therefore cannot amend his Complaint as a matter of course. As such, Plaintiff may amend his pleading only when the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Here, the Court finds that Plaintiff's Proposed Amended Complaint is futile as the Amended Complaint suffers from the same defects as the current Complaint.

As to standing, Plaintiff's Proposed Complaint alleges:

> Plaintiff has suffered ongoing coercive harm, including threats of enforcement against his religious beliefs. Plaintiff faces a real and imminent risk of further harm under the IHRA definition, including the potential loss of federal benefits (e.g., Medicaid, rural development housing loans), constituting an injury sufficient to confer standing for declaratory and injunctive relief.

(Doc. 56, pages 5-6). Plaintiff's Proposed Complaint only makes conclusory statements or rehashes arguments that the Court has already dismissed. Plaintiff has failed to show any coercive harm that he has suffered by Defendants in this case.[2] Plaintiff continues to allege only speculative harms that are not sufficient as to the injury-in-fact requirement or fail as to the traceability of his

---

[2] Plaintiff makes the argument in his Proposed Complaint that he has been defamed by the Anti-Defamation League and has been targeted by the Missouri Republican Party. (Doc. 56, page 6). However, these groups are not parties to the current action and have no bearing as to the issues presented by Defendants in this case.

injury. For the reasons stated, the Court **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint based on a finding of futility.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Jurisdiction is **GRANTED**. Defendants' Motion to Dismiss for Failure to State a Claim is **FOUND AS MOOT** and Plaintiff's *Pro Se* Motion for Leave to File an Amended Complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 30, 2025

   */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**